UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

PREMIER PACKAGING, LLC,                                                                                Plaintiff,

v.                                                            Civil Action No. 3:24-cv-245-DJH

AUDION AUTOMATION, LTD.,                                          Defendant.

\* \* \* \* \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter arises from a failed business transaction between Plaintiff Premier Packaging, LLC and Defendant Audion Automation, LTD.[1] In April 2024, Premier sued Audion alleging breach of contract, breach of the implied warranty of fitness for a particular purpose, breach of the implied warranty of merchantability, unjust enrichment, and breach of express warranty. (Docket No. 1) Now, Audion moves pursuant to 28 U.S.C. § 1404(a) and Federal Rule of Civil Procedure 12(b)(6) to transfer this action to the United States District Court for the Northern District of Ohio, Eastern Division, or, in the alternative, to dismiss the Complaint. (D.N. 17) As grounds for the motion, Audion asserts the validity and enforceability of a forum-selection clause purportedly included in the parties' agreement. (*Id.*) Premier opposes Audion's motion and maintains that the parties' agreement contains no valid and enforceable forum-selection clause. (D.N. 18) After careful consideration, the Court will deny Audion's motion for the reasons set out below.

**I.  BACKGROUND**

At the outset, the Court notes that the parties present starkly different accounts of the negotiations and transactions that form the basis of this action. Premier is "a market leader in

---

[1] Audion is a Texas limited partnership that operates from a manufacturing facility in Ohio under the name "Clamco." (D.N. 17-1, PageID.78 ¶¶ 1–2) Audion is "an affiliate" of Packaging Aids Corporation, which operates under the name "PAC Machinery." (*Id.*)

1

package design, [the] manufacture of corrugated boxes, industrial supply processes, packaging equipment and customizable packaging solutions." (D.N. 1, PageID.3 ¶ 8) Levi Strauss & Co. (Levi's) is one of Premier's customers, and in the fall of 2022, Premier and Levi's began to discuss a potential deal wherein Premier would provide packaging and labeling machines for Levi's Erlanger, Kentucky fulfillment complex. (*Id.*, PageID.4–5 ¶ 13) To consummate this transaction, Premier "began exploring the possibility of acquiring" automatic bagging machines from Audion. (*Id.*, PageID.5 ¶ 14) In particular, Premier was interested in acquiring several of Audion's "Rollbag R3200XL Fulfillment Bagger" machines and providing them to Levi's. (*Id.*, PageID.4 ¶ 12; *see also id.*, PageID.5 ¶ 14)

To that end, Audion and Premier engaged in a months-long negotiation process that included several price quotes and term modifications.[2] Audion provided an initial price quote on June 20, 2022. (D.N. 21-1, PageID.194–210) The initial quote included a "Terms and Conditions" attachment, which contained a forum-selection clause. (*Id.*, PageID.208–10) The clause was titled "Governing Law, Exclusive Jurisdiction & Venue" and provided that

> [t]his Sales Offer shall be interpreted and construed in accordance with the laws of the State of Ohio. Any dispute arising from, or related to, this Sales Offer shall be litigated or mediated exclusively in the federal or state courts located in Cuyahoga County, Ohio. The parties irrevocably and unconditionally waive any objection to the laying of venue of any suit, action or any proceeding exclusively in such courts and irrevocably waive and agree not to plead or claim in any such court that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.

---

[2] The Court may consider the initial price quote, as well as the other price quotes and communications involved in the parties' negotiation process, because they are "necessarily embraced by" Premier's contract claims, *Scepter, Inc. v. Nolan Transp. Grp., LLC,* 352 F. Supp. 3d 825, 828 n.1 (M.D. Tenn. 2018), and are "referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008). The parties do not dispute that the Court may consider these documents for the purpose of the present motion. (*See generally* D.N. 17-1 (attaching and discussing such documents and the parties' negotiations); *see also* D.N. 18, PageID.132–37 (discussing these documents and the parties' negotiations))

2

(*Id.*, PageID.210)

Premier and Audion continued to negotiate the deal throughout summer 2022 and exchanged several price quotes with different terms in the process. (*See id.*, PageID.214, 219–35, 239–55) Ultimately, Audion sent Premier a final price quote on August 30, 2022. (*See* D.N. 1, PageID.5 ¶ 15; *see also* D.N. 17-1, PageID.84–99) Among a variety of other terms, the August 30 quote stated that it was only valid "30 days from [the] date of quotation."[3] (D.N. 17-1, PageID.95) The August 30 quote also included the same terms-and-conditions document attached to the earlier price quotes.[4] (*Id.*, PageID.97–99) Audion and Premier had not concluded their negotiations, however, and the parties were still finalizing the deal as of late October 2022. (*See* D.N. 17, PageID.66; D.N. 18, PageID.135–36; *see also* D.N. 17-1, PageID.118–20) On November 25, 2022, Audion agreed to Premier's proposed changes (D.N. 21-1, PageID.317–21), and Premier sent a purchase order to Audion via email on December 1, 2022. (*Id.*, PageID.323–24; D.N. 1, PageID.6 ¶ 19) The next day, Audion issued an order confirmation to Premier. (D.N. 1, PageID.6–7 ¶ 22; D.N. 1-2, PageID.27) Neither Premier's December 1 purchase order nor Audion's order confirmation explicitly referenced the August 30 price quote or the terms-and-conditions attachment. (D.N. 17-1, PageID.122–24)

---

[3] The parties dispute whether the August 30 price quote had expired by the time Premier sent Audion its final purchase order on December 1, 2022. (*See* D.N. 21-1, PageID.324; D.N. 1, PageID.6 ¶ 19; *see also* D.N. 18, PageID.141; D.N. 21, PageID.171) According to Premier, "the Quote was already sixty-days expired by the time Premier issued the Purchase Order" on December 1. (D.N. 18, PageID.141) Audion, on the other hand, maintains that it "expressly agreed during the negotiation process that it would honor the pricing it provided and that there would be no hard cut off date for the Levi's deal." (D.N. 21, PageID.171 (internal quotations omitted))

[4] According to Premier, Audion's "proposed terms and conditions document was never agreed to by the parties and was never executed." (D.N. 1, PageID.5 ¶ 16) Audion, on the other hand, asserts that "[t]he Terms and Conditions are a vital part" of its business and that it "would not have entered in any agreement with Premier without Premier's acceptance of the Terms and Conditions." (D.N. 17, PageID.65 (citation omitted))

3

Premier and Audion's business relationship ultimately soured, and on April 17, 2024, Premier filed the instant action asserting various contract claims against Audion.[5] (*See generally* D.N. 1) Now, Audion moves to transfer this action to the United States District Court for the Northern District of Ohio, Eastern Division, or, in the alternative, to dismiss the complaint based on the purported forum-selection clause in the parties' agreement. (D.N. 17; *see also* D.N. 21) In support, Audion relies on the forum-selection clause included in the terms-and-conditions attachment to each of the parties' price quotes, including the final price quote provided on August 30, 2022. (*See generally* D.N. 17) Premier responds that it never agreed to the terms-and-conditions attachment, that each of the price quotes had expired on their own terms as of the parties' final agreement, and that neither transfer nor dismissal are warranted. (*See generally* D.N. 18) The Court considers each argument below.

## II.   ANALYSIS

Pursuant to § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). A party may move for enforcement of a forum-selection clause through either a motion to transfer venue under § 1404(a) or a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. *See Ellenberger v. Alphabet, Inc.*, No. 3:19-CV-527-DJH-RSE, 2020 WL 11772628, at *2 (W.D. Ky. July 17, 2020); *see also Langley v. Prudential Mortg. Cap. Co., LLC*, 546 F.3d 365, 369 (6th Cir. 2008).

---

[5] Premier claims that the automatic bagging machines provided by Audion were defective. (*See generally* D.N. 1) This allegation is not relevant to Audion's motion to transfer.

As both parties agree (D.N. 17, PageID.68; D.N. 18, PageID.138), the Court follows a two-step approach when considering whether to transfer or dismiss an action pursuant to a forum-selection clause. *See Lakeside Surfaces, Inc. v. Cambria Co., LLC*, 16 F.4th 209, 214–15 (6th Cir. 2021) (applying this approach in the forum non conveniens context); *see also Atl. Marine Construction Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 61 (2013) (observing that "both § 1404(a) and the forum non conveniens doctrine from which it derives entail the same balancing-of-interests standard"). First, the Court "determine[s] whether a forum-selection clause is applicable to the claims at issue, mandatory, valid, and enforceable." *Lakeside Surfaces*, 16 F.4th at 215 (citation omitted). If so, the Court applies a "modified" analysis wherein "the plaintiff bears the burden of showing that [certain] public factors weigh heavily against dismissal" or transfer. *See id.* at 216. Under this modified approach, "the plaintiff's choice of forum is given no weight and the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Ellenberger*, 2020 WL 11772628, at *5 (quotations omitted). Alternatively, if there is no enforceable forum-selection clause, the Court applies the "traditional" analysis wherein the defendant must demonstrate that transfer or dismissal is warranted based on certain public and private factors. *See Lakeside Surfaces*, 16 F.4th at 214–16; *see also Gantt v. Reliance Standard Life Ins. Co.*, 646 F. Supp. 3d 870, 873–74 (W.D. Ky. 2022).

Importantly, when considering a motion to transfer under § 1404(a), courts in this district regularly "decline[] to give full weight to a forum selection clause where the parties dispute[] its validity in good faith." *Michigan Custom Machines, Inc. v. AIT Worldwide Logistics, Inc.*, 531 F. Supp. 3d 1208, 1217–18 (E.D. Mich. 2021) (collecting authorities); *see also Cowden v. Parker & Assocs., Inc.*, No. CIVA 5:09CV0323KKC, 2010 WL 715850, at *3 n.3 (E.D. Ky. Feb. 22, 2010); *Breeders' Cup Ltd. v. Nuvei Techs., Inc.*, No. 5:19-CV-00113-GFVT, 2020 WL 1046817,

at *4 (E.D. Ky. Mar. 4, 2020). There are compelling justifications for this approach—"contract formation may have a dispositive effect on at least some of the merits of [the parties' claims and defenses]," and such "fact-intensive" matters "benefit from a complete record, with the assistance of discovery, before [a] ruling on the merits." *Michigan Custom Machs.*, 531 F. Supp. 3d at 1217. Ultimately, when the parties dispute the validity of a purported forum-selection clause in good faith, the Court may apply the traditional § 1404(a) analysis. *See, e.g.*, *id.* at 1218 (applying the traditional § 1404(a) analysis when the parties genuinely disputed the validity of a forum-selection clause and collecting cases).

After carefully reviewing the parties' briefing on this disputed issue, the Court concludes that any definitive ruling on the nature and terms of the parties' agreement would be premature at this stage of the proceedings. There are significant factual disputes between the parties relating to the existence and validity of a forum-selection clause. (*See, e.g.*, D.N. 17, PageID.63–69, D.N. 18, PageID.132–143 (offering contrasting factual theories of contract formation); *see also* D.N. 18, PageID.143 (claiming that the August 30 quote was rejected); *id.*, PageID.141 (arguing that the August 30 quote had expired)) These "fact-intensive" matters would "benefit from a complete record, with the assistance of discovery, before [a] ruling on the merits." *See Michigan Custom Machs.*, 531 F. Supp. 3d at 1217 ("The parties dispute whether they have agreed to a valid forum selection clause. They even dispute which communications constitute their contract . . . . [T]he Court hesitates to rule definitively on those matters at this stage of the case."). Moreover, the Court must resolve factual disputes in Premier's favor at this stage of the proceedings. *See Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (motion to dismiss); *Gonzales & Gonzales*, 677 F. Supp. 2d at 991 (motion to transfer). Thus, the Court will "decline[] to give full

weight" to the forum-selection clause at this time and will instead apply the traditional § 1404(a) analysis. *See Michigan Custom Machs.*, 531 F. Supp. 3d at 1218.

Pursuant to 28 U.S.C. § 1404(a), "[t]o establish whether transfer is proper, the movant must demonstrate: (1) the transferee court is one in which the action could have been brough[t] initially; and (2) a transfer would serve the convenience of the parties and witnesses and otherwise promote the interests of justice." *Parrott v. Gemini Direct, LLC*, No. 3:23-CV-593-RGJ, 2024 WL 647393, at *5 (W.D. Ky. Feb. 15, 2024) (quotation omitted). The Court enjoys substantial discretion in determining whether transfer is appropriate. *Bunting ex rel. Gray v. Gray*, 2 F. App'x 443, 448 (6th Cir. 2001). Here, the parties do not dispute that the United States District Court for the Northern District of Ohio, Eastern Division, would be a proper venue under 28 U.S.C. § 1391. (*see generally* D.N. 17; D.N. 18) Thus, the Court need only consider the second § 1404(a) element for present purposes.

When considering whether transfer would serve the convenience of the parties and witnesses and otherwise promote the interests of justice under the traditional § 1404(a) analysis, the Court examines several private and public factors including

> [1] the relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; [3] possibility of view of premises, if view would be appropriate to the action; and [4] all other practical problems that make trial of a case easy, expeditious and inexpensive[;] . . . . [5] administrative difficulties flowing from court congestion; [6] the local interest in having localized controversies decided at home; [7] the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; [8] the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and [9] the unfairness of burdening citizens in an unrelated forum with jury duty.

*Lakeside Surfaces*, 16 F.4th at 215 n.2; *see also Parrott*, 2024 WL 647393, at *5. This list is non-exhaustive, and courts in this district have considered additional factors. *See, e.g.*, *Gantt*, 646 F. Supp. 3d at 873 (considering the "relative means of the parties"). "The burden remains on the

moving party to prove by the preponderance of evidence that transfer under 28 U.S.C. § 1404(a) is appropriate." *Parrott*, 2024 WL 647393, at *5 (citation omitted). Moreover, "the plaintiff's choice of forum should rarely be disturbed . . . unless the balance [of convenience] is strongly in favor of the defendant." *Id.* at *6 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (alteration in original)); *see also Gray v. Duval Cnty. Pub. Sch.*, No. 3:13-CV-00902-TBR, 2014 WL 4716487, at *3 (W.D. Ky. Sept. 22, 2014) (quoting *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir.1951)). Ultimately, however, "the plaintiff's choice is not dispositive," and the Court's decision must be based on an "individualized, case-by-case comparison of convenience and fairness." *Gantt*, 646 F. Supp. 3d at 874 (quotations and citations omitted).

Audion does not articulate any justification for transfer under the private factors, instead relying entirely on the purported forum-selection clause. (*See* D.N. 17, PageID.74–76; D.N. 21, PageID.175–76) Audion's arguments relating to the public factors are likewise almost wholly based on the existence of a forum-selection clause. (*See* D.N. 17, PageID.75–76 (arguing that "[t]he public interest favors adjudicating the controversy according to the parties' contractual agreement" and that Ohio courts would be most familiar with the relevant law because "the parties contractually agreed" that Ohio law would apply)) But as discussed above, the Court will not resolve the complicated factual disputes regarding the parties' agreement without the benefit of discovery. And unlike Audion, Premier has presented a detailed argument that the relevant private and public factors weigh against transfer.[6] (D.N. 18, PageID.146–52)

---

[6] For example, as to the convenience of witnesses, Premier notes that "[t]he pivotal third-party witness in this case is Premier's customer, Levi's," and that "most of the actions giving rise to the present dispute occurred in [the] Levi's factory in Kentucky, where Defendant's . . . machines were delivered and installed." (D.N. 18, PageID.149) Further, Premier argues that its choice of forum weighs heavily in the analysis (*id.*, PageID.147–48) and that "the public interest factors as applied in this case also disfavor transfer to Ohio in that they do not strongly weigh in Defendant's

In sum, Audion has failed to meet its burden of demonstrating that transfer or dismissal is appropriate. *See Parrott*, 2024 WL 647393, at *5 (citation omitted). The Court will therefore deny Audion's motion to transfer or dismiss.

## III. CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Audion's motion to transfer or dismiss (D.N. 17) is **DENIED.**

(2) Pursuant to 28 U.S.C. § 636(b)(1)(A), this matter is **REFERRED** to U.S. Magistrate Judge Colin H. Lindsay for resolution of all litigation planning issues, entry of scheduling orders, consideration of amendments thereto, and resolution of all non-dispositive matters, including discovery issues. Judge Lindsay is further authorized to conduct a settlement conference in this matter at any time.

March 12, 2025

David J. Hale, Judge
United States District Court

---

favor." (*Id.*, PageID.151) The Court agrees that these are compelling arguments which weigh against the transfer of this action.